[Crim. No. 14307. Second Dist., Div. Four. Nov. 22, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM LLOYD BLAGG et al., Defendants and Appellants.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendants Sells, Blagg, Lewis, Burt and Ville were charged in a four-count information as follows: with the crimes of sodomy in violation of section 286 of the Penal Code (count I); assault with a deadly weapon in violation of section 245 of the Penal Code (count II); and conspiracy to commit violations of sections 245 and 286, in violation of section 182 of the Penal Code (count IV); in addition, Sells only was charged, in count III, with a violation of section 288a of the Penal Code (oral copulation). All defendants pled not guilty and Lewis and Ville also pled not guilty by reason of insanity. After a trial by jury, Sells was found guilty on all four counts, Blagg, Lewis and Burt were found not guilty on count II and guilty on counts I and IV, Ville was found guilty of simple assault as a lesser and included offense on count I, guilty of a violation of section 240 of the Penal Code as a lesser and included offense on count II, and guilty on count IV.[1] The not guilty by reason of insanity pleas by Lewis and Ville were tried by the court, a jury trial on that issue having been waived; the court found that Lewis was insane at the time of the offenses but that Ville was sane. Motions for new trial were made and denied; probation was denied; Sells was sentenced to state prison on count I; Blagg, Burt and Ville were each sentenced to state prison on count IV; Lewis was committed to the state hospital pursuant to section 1026 of the Penal Code. Based on a finding that all of the offenses charged were "committed in pursuit of a common objective," the trial court entered no sen-

[1]The verdicts on count IV found the several defendants guilty of a conspiracy to violate section 286 of the Penal Code—thus acquitting them of conspiracy to violate section 245 of that code.

tences on counts II, III or IV as to Sells, nor on count I as to Blagg, Burt and Ville. Sells, Blagg, Burt and Ville have appealed from the judgments pronounced against them.[2]

I

■■ As will be noted, the trial court's action in imposing no sentence at all on various counts did not conform to the procedure approved in *People* v. *Niles* (1964) 227 Cal.App.2d 749 [39 Cal.Rptr. 11] and in *In re Wright* (1967) 65 Cal.2d 650, 655-657 [56 Cal.Rptr. 110, 422 P.2d 998]. As a result, there technically is no ''judgment'' on those counts. A similar situation faced us in *People* v. *Jenkins* (1965) 231 Cal. App.2d 928, where we said (p. 934 [42 Cal.Rptr. 373]) : ''The logic of this argument must be conceded, but it is premised upon the assumption that the proceeding on count I was halted short of judgment. Without doubt, the trial court refused to pronounce a separate sentence on count I because of the prohibition against double punishment in Penal Code, section 654. *People* v. *McFarland* [58 Cal.2d 748 (26 Cal.Rptr. 473, 376 P.2d 449)], points out that section 654 prohibits double punishment, but not double conviction. The sentence which the court pronounced was the single judgment resulting from the two convictions, and both convictions should be reviewable on this appeal. If the conviction was arrived at through legal error, it should not be allowed to stand. The only opportunity this defendant has for a review of alleged errors of law relating to that conviction is by appeal at this time. There is no reason to believe that the Supreme Court intended that the prohibition against multiple sentencing should deprive the convicted man of appellate review of all the convictions which stand against him. Since it seems clear that the court's failure to sentence on count I was merely a means of avoiding a violation of Penal Code, section 654, our conclusion is that the conviction, as such, stands and defendant is entitled to have it reviewed on this appeal.'' That procedure has been approved in *People* v. *Allison* (1966) 245 Cal.App.2d 568, 575 [54 Cal.Rptr. 148]. Accordingly, we proceed to review all of the counts in which guilty verdicts were returned, whether or not sentences were imposed thereon.

---

[2]The notice of appeal filed by Burt reads as follows:
''You will please take notice that defendant, LOUIS JACK BURT, hereby appeals to the District Court of Appeals, Second District, from the order entered in this Court on September 5, 1967, as follows: Appeals from the conviction and pronouncement of sentence.''
In spite of the use of the word ''order,'' and the reference to ''the conviction and pronouncement of sentence,'' we treat the notice as one from the judgment.

## II

■ Before considering the merits of the appeals, we consider another procedural matter relating to defendant Ville.

At the time of the prosecution of the case at bench, Ville was under a commitment to Atascadero State Hospital, resulting from a finding of not guilty by reason of insanity in an unrelated case. In the instant case, he pled not guilty and not guilty by reason of insanity. The trial court appointed psychiatrists to examine him both as to his sanity at the time of the offenses herein involved and as to his capacity to stand trial. The reports were that he had been insane at the time of the offenses but that he was capable of standing trial. A long discussion took place in chambers between his counsel, the prosecuting attorney and the judge, wherein Ville's counsel sought a stipulation under which Ville's not guilty by reason of insanity plea would be heard first and be submitted on the psychiatrists' reports. The tactic failed because the prosecuting attorney would not so stipulate. However, in the course of that discussion, Ville's counsel expressly stated that he did not contest the psychiatric report that his client was capable of standing trial. After the fruitless discussion as to the procedure on the insanity plea, the case resumed in open court. The trial court made the following announcement: "THE COURT: All right, Mr. Ville. The Court has considered, read and considered the reports of Tenenbaum and Wagner and will find that you are sufficiently sane to continue with counsel in the matter of your defense, and that you are capable of understanding the charges against you on Indictment No. 5418, and will order you to stand trial on August 8th, 1967. Mr. Weaver, your attorney, has moved the Court for a continuance on the basis of his inability to prepare within that time. The court has denied that motion."

We think that the record shows a substantial compliance with the hearing requirement of section 1368. It is true that the trial court did not formally "suspend" the criminal case and announce that he was holding a section 1368 hearing. But the matter was raised and decided before trial; there was a separate consideration of the 1368 issue and a separate ruling thereon. Neither Ville nor his counsel demanded any greater formality. Since the issue is one which the trial court may determine without a jury (unless one is expressly demanded), and since counsel had already told the court that he had no independent psychiatric testimony to present, we think that Ville had all of the protection that section 1368 contemplates.

### III

All of the offenses charged were alleged to have taken place on the same occasion and against the same victim—George William Hotchkiss, Jr. The five defendants and Hotchkiss were all incarcerated in the felony tank of the San Luis Obispo County jail. It was the theory of the prosecution that the defendants had learned, by means of a television set available in the cell, that Hotchkiss was under arrest for child molestation; that they had decided to inflict their own punishment on him; and that, in that endeavor, they had beaten him, partially shaved his head into a ''Mohawk'' cut, and forced him to submit to acts of sodomy and to perform oral copulation on Sells. There was substantial evidence, based on Hotchkiss' physical condition and observations of the jail personnel, to support the findings that Hotchkiss had been mistreated as alleged—except that the allegation of the use of a deadly weapon was not thus supported as the verdicts indicate. However, the identity of the perpetrators of the sexual offenses—as distinguished from other physical harm—rests primarily on Hotchkiss' testimony, with some support from the testimony of a trusty prisoner.

On this appeal, defendants urge a series of alleged procedural errors—contentions which we find to be without merit —and two objections to exclusion of evidence, one of which we find to be meritorious. In addition, we find one error as to defendant Ville which requires a reversal as to him on count I.

### IV

Defendants' first contention is that the court erred in failing to grant defendants' motion for a change of venue, on the grounds that wide notoriety and publicity had been given to the incident. A motion for a change of venue is addressed to the sound discretion of the trial court. (*People* v. *Burwell* (1955) 44 Cal.2d 16, 29-30 [279 P.2d 744].) In *People* v. *Duncan* (1960) 53 Cal.2d 803 [3 Cal.Rptr. 351, 350 P.2d 103], defendant moved for a change of venue because of wide publicity adverse to defendant. The court said that, even if it be assumed that many persons formed opinions unfavorable to defendant as a result of publicity, it does not follow that persons without such views cannot be found to act as jurors, or that those who had adverse opinions would be unable to set them aside and try the case fairly on the basis of the evidence formed in court.

A review of the *voir dire* proceedings in the case at bench

showed that about one-half of the jurors had not heard of the incident, and of those that had heard of the incident most had not formed an opinion. There was no juror who said he formed an opinion adverse to defendants because of what he had read or heard. In view of the totality of circumstances, we find no abuse of discretion.

## V

Defendants contend that the trial court erred in denying their motions for separate trials. Of the appellants, only Sells and Burt moved for a separate trial.

The defendants who made no motion for a separate trial cannot raise this error on appeal. As to defendants who raised the point, a defendant is not entitled to a separate trial as a matter of right, and the severance is a matter of the court's discretion. (See *People* v. *Alvarado* (1967) 255 Cal.App.2d 285, 288 [62 Cal.Rptr. 891].)

Defendants claim that Ville's extrajudicial statement to the effect that, ''He deserves it, the fucking child molester,'' prejudiced the other defendants, and that a separate trial should have been granted. We do not agree. The court admonished the jury that Mr. Ville's statement simply went to Mr. Ville and had nothing to do with the other defendants and was not evidence of their guilt or innocence. *People* v. *Aranda* (1965) 63 Cal.2d 518, 530, 531 [47 Cal.Rptr. 353, 407 P.2d 265], is only applicable where the extrajudicial statement of one defendant that is admitted into evidence implicates a codefendant. Defendant Ville's extrajudicial statement that was entered into evidence cannot be construed as implicating any of the codefendants; no reference is made to any of the other defendants by Ville's statement, either directly or indirectly.

## VI

Defendants assert that the court erroneously selected the alternate jurors before the regular jurors were sworn, in violation of Penal Code section 1089. Mere irregularity in the selection of an alternate juror does not warrant a reversal where there is no showing of prejudice. (*People* v. *Davidian* (1937) 20 Cal.App.2d 720, 727 [67 Cal.Rptr. 1085].)[3]

## VII

Defendants contend that the court erred in failing to

---

[3]The People also say the motion came too late (R.B. 36). We need not decide this, since we have found no prejudice.

grant their motion for mistrial based on the misconduct of Mrs. Sieker, a juror. After the jury and the alternate juror had been accepted by all counsel, Mrs. Sieker, one of the accepted jurors, asked to be excused. Mrs. Sieker said that her husband was working with patients at the Atascadero State Hospital and she was afraid that if a guilty verdict was brought in her husband's life would be in danger. The juror was subsequently excused by means of a peremptory challenge of the People. The defendants did not exhaust their peremptory challenges, and therefore there was no prejudice in the judge's denying the motion to dismiss the juror for cause.

## VIII

 Defendants contend that the trial court erred in restricting the area in which Mr. Hotchkiss could be cross-examined. Defendants claimed that they wished to cross-examine Hotchkiss in the area of his sexual fantasies; the People urge that they were not so restricted and, in addition, that the issue was not properly preserved by objection in the trial court. We think the People wrong on both of these preliminary contentions.

The matter of Hotchkiss' sexual fantasies arose first when he was examined on *voir dire*. The trial court pointed out that he was aware of Hotchkiss' commitment as a "sexual psychopath" and of his fantasies as involved in that commitment, but refused to find him incompetent to testify.[4]

---

[4]The record as to the proceedings at that stage shows the following (Mr. Murphy was counsel for defendant Lewis and Mr. Wright for defendant Blagg):

"Mr. Murphy: I think the problem is this, Your Honor. We feel, and I feel, that we have a right to go into this Defendant's sexual fantasizing about little girls, about adults——

"The Court: Well, Mister——

"Mr. Murphy: ——in areas——

"The Court: Mr. Murphy, let's look at it this way, maybe we can obviate a lot of wasting of time: This man has been adjudicated a sexual psychopath. The court has read all the reports on him, the Court is aware of his fantasies, his bizarre activities is aware of everything that he has done. His record is replete with these activities. I have read all of them.

"This still doesn't raise a question as to his competency to testify. A sexual psychopath, a mentally disordered sex offender I will admit him to be. But that doesn't—it might go, but it is not conclusive, and as far as this Court is concerned, the Court is not impressed at all.

"Mr. Murphy: We think it is important——

"The Court: If you can bring a psychiatrist in here that will testify that a mentally disordered sex offender, this one, or this sexual psychopath, that his mental debility or mental derangement is such that he can't competently recollect or relate back to the incidents to which he testifies, or if he can't communicate to the jury in reference to those activities, then the Court will not allow him to testify.

"But up to now all you have proved is that he is a mentally dis-

Because the defense counsel had indicated, during the dis cussion above quoted, that they contemplated cross-examining Hotchkiss on his sexual fantasies as a matter of credibility, the prosecuting attorney, after the court had made its ruling

---

ordered sex offender, he has been in and out of hospitals for treatment, as such, that he is a sexual psychopath and he has received treatment as such.

"MR. MURPHY: Well, I think one——

"THE COURT: I mean, these don't got to his competency to testify as to the incidents in question.

"MR. MURPHY: I might say this, Your Honor, on behalf of the Defendant Lewis, this issue is going to—this probably will come up in connection with his credibility also. We feel that there is authority that the jury should know about his tendency in previous times to sexually fantasize and probably should receive an instruction——

"THE COURT: Let's deal with credibility when we come to it. Right now we are on voir dire on his competency.

"MR. MURPHY: All right, Your Honor. Having introduced evidence that he was mentally committed in 1959 and has not been certified as recovered from his mental illness, on behalf of Defendant Lewis I will cease at this time my voir dire examination.

"THE COURT: All right. Mr. Weaver?

"MR. WEAVER: I think that unless there is an objection, it would save time, as to what is admissible on competency, I would also make an offer, an offer of proof, asking questions relating to his fantasization in sexual areas, citing the case of People vs. McCaughan, 49 Cal. (2d) 409 [317 P.2d 974], also concerned with the same question. The Court stated, 'It is universally recognized the competency of a witness is to be determined by the trial court in the exercise of its judicial discretion.' Right. 'Manifestly, however, sound discretion demands the exercise of great caution in qualifying as competent a witness who has a history of insane delusions relating to the very subject of inquiry in a case in which the question is not simply whether or not an act was done, but, rather, the manner in which it was done and in which the testimony as to details may mean the difference between conviction and acquittal.'

"THE COURT: You bring in some testimony that he is insane to the point where he is deprived of his ability to perceive the events to which he is to testify, bring in some testimony he is deprived of the ability to recollection and communicate in reference to these incidents, and some testimony relative to whether or not he knows right from wrong and can distinguish between the truth and a lie, then you can possibly convince the Court. But simply to say that a man is a mentally disturbed sex offender——

"MR. WEAVER: Oh, no, no, no. Our——

"THE COURT: Or that he engages in sexual fantasies doesn't prove, in my book, that he is not competent to testify on the stand under oath and tell the truth and relate to incidents that he observed and saw or happened to him. It is as simple as that.

"MR. WEAVER: Not in the normal case, it wouldn't. I agree with the Court. However, I think what the case is getting at is when you have a witness who has fantasies as to a particular area, in this case sexual fantasies, and the——

"THE COURT: Sexual fantasies entirely related to small girls, not small boys, not grown women, not grown men. Every principal involved in this case, or alleged principal, is a grown male animal.

"MR. WEAVER: I realize the witness did answer that he hadn't on those. But I was hoping we'd get an opportunity to question him further in that regard."

on competency, raised that issue and asked for a ruling so that it would not arise before the jury. After some discussion, and a recess to enable the trial court to examine some case authority, the court made a ruling as follows: "THE COURT: So that we won't run into any confusion on the question of examination or cross examination going to the credibility of the witness Hotchkiss, which has been raised by the District Attorney's office, I think it is quite clear from the authorities that the Defendant can on cross examination bring out whether or not there has been a felony conviction. If so, how many and the nature of them. But the only details they can go into are details which would appear in the judgment of record of a conviction, and these generally simply state the nature of the crime, burglary, first degree or second degree or whatnot, armed or not armed.

"In this case, the Court is going to rule that the most that can be asked by the defense is the nature of the offense, how many offenses of the same kind or how many convictions of any kind of a felony nature had been committed by the Defendant, and what degree. Any details which would not appear in a judgment of record of conviction may not be gone into. . . .

"Nor may inquiry be made upon the facts upon which conviction was based. So keep that in mind."

Although the court does not specifically state that defendants' attorney could not examine Hotchkiss in the area of his sexual fantasies (as the People's brief correctly states) a fair examination of the judge's statement quoted above, certainly would lead to the interpretation urged on us by the defendants. Also, the People's assertion that defendants' attorneys did not object to restrictions on cross-examinations is not well taken. The entire discussion between the court, the prosecuting attorneys, and the defendants' attorneys are in effect an objection. Certainly defendants' attorneys were not acceding to the prosecution's view and they offered to get cases on the issue. Once the court had made up his mind to restrict cross-examination, a decision apparently made after an examination of the law, we can see no further need for defendants' attorneys to say, "I object."

We believe that this restriction of cross-examination was error. In sex cases methods of impeachment are much more liberal (*People* v. *Neely* (1964) 228 Cal.App.2d 16, 19-21 [39 Cal.Rptr. 251]), and broad cross-examination of the prosecuting witness on prior sexual experience, fabrication, and sexual

fantasy should be allowed. (*People* v. *Clark* (1965) 63 Cal.2d 503, 505 [47 Cal.Rptr. 382, 407 P.2d 294].)

The People urge here, as they did in the trial court, that Hotchkiss had fantasies only as to young girls and that this did not indicate any tendency to fantasize as to the offenses in the case before the court, which involved conduct with adult males. They also point to the fact that a psychiatrist who testified on the *voir dire* proceeding had testified that Hotchkiss' fantasies were not such as to affect his testimony in the case at hand.

But we think that this takes too narrow a view of the problem. Whether or not sexual fantasies in one area suggest the possibility of similar fantasies in other areas of sexual conduct is a matter of fact and not of law; and it is not a matter on which a trial court (or this court) could exercise judicial knowledge. Nor is it a matter conclusively determined by the testimony of a single psychiatric witness. Whether or not Hotchkiss' proven and admitted fantasies affected his credibility here was a matter for the jury and not for the court. Defendants were entitled to explore that issue and to attempt to convince the jury of their theory. Since, as we have pointed out above, there is only Hotchkiss' testimony on the issue of the extent of involvement of any one defendant, the error was prejudicial.

## IX

Defendants also contend that they were improperly refused permission to introduce certain hospital records pertaining to Hotchkiss' condition when examined at the hospital following the attacks on him.

In part, the court's rulings rested on the status of the case when the various records were offered. This problem is not likely to arise on a retrial and we need not determine whether or not the court abused its wide discretion in controlling the order of proof.

However, the trial court also seemed to believe that hospital records were inadmissible unless the physicians making or directing the entries were available to explain those entries. This, of course, is not the law. Hospital records are admissible if properly authenticated and if a proper foundation is laid. The fact that the records are hearsay and that the particular nurse, doctor or other person making the record has not been called does not preclude their admission. (*People* v. *Gorgol* (1953) 122 Cal.App.2d 281, 296, 300 [265 P.2d 69].)

Under sections 1560 et seq. of the Evidence Code (applicable at the time of trial), the requirements as to foundation had been relaxed so that an affidavit could be used in place of the oral testimony of an authenticating witness. The refusal on this ground was thus an additional error but, since we do not know what the records would have shown, we cannot say that the error was prejudicial. On a retrial, the court can and will determine the matter of admissibility properly and then can reach the issue of relevancy which the ruling at the trial under review prevented it from deciding.

## X

The error with reference to the cross-examination of Hotchkiss requires a reversal as to count IV as to all appellants, and to Sells on count III, and as to count I as to defendants Sells, Lewis and Burt, since those counts, as to those defendants, involve Hotchkiss' credibility with references to sexual offenses. But the verdicts as to Sells and Ville on count II are not thus affected. The offense therein involved was not sexual. and there was ample evidence, independent of Hotchkiss, to support the finding of assault therein involved.

However, the verdict as to Ville on count I may not stand for a different reason. Count I charged the offense of sodomy; the verdict as to Ville was that he was guilty of simple assault. But, since sodomy may be committed with the consent of both parties, assault is not an "included" offense. In a jury case, a finding of guilt of a non-included offense is fatal. (*People* v. *Leech* (1965) 232 Cal.App.2d 397 [42 Cal. Rptr. 745].)

The judgments are reversed; the case is remanded for further proceedings consistent with this opinion

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied December 13, 1968.