[Crim. No. 638. Fifth Dist. Feb. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM J. CARROLL, Defendant and Appellant.

## COUNSEL

Roslyn Robbins Dienstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Elliott D. McCarty, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—Defendant appeals from a conviction of robbery first degree after a trial by jury. Viewing the record in the light most favorable to the People, as we are bound to do following a guilty verdict (*People* v. *Sweeney,* 55 Cal.2d 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), the facts are these: About 6 p.m. June 9, 1968, at Kingman, Arizona, defendant and his wife were hitchhiking when Fausto Rendueles picked them up. The three proceeded to California in Rendueles' car. About 2 a.m. defendant and his wife robbed Rendueles of his wallet, money and wristwatch at gunpoint, bound him hand and foot, and left him behind a billboard on the California City exit from the main highway. They drove the car to Bakersfield, stopping once to eat, using Rendueles' money to pay for the food.

Rendueles freed himself and reported the robbery to police, giving them a description of his automobile which bore Florida license plates.

About 4 a.m. in the City of Bakersfield, an officer saw defendant driving the Rendueles automobile which he had heard described on a police broadcast. He radioed for assistance as he followed defendant, who, in an attempt to elude his pursuer, drove the car into a ravine and stalled it. Another officer, responding to the call, saw the car enter the ravine and stop. He observed defendant and his wife leave the car and run in his direction. He got out of the patrol car, walked toward them, stated that he was a police officer, and ordered them to stop. Defendant ran, but was captured after a short chase.

Rendueles' wallet was found in defendant's pocket, and his wristwatch was in the car. Some .22 caliber bullets were found in defendant's suitcase, but the gun was not found. Rendueles identified defendant as the robber, and no objection was made to this in-court identification.

■ Defense counsel now contends that the in-court identification was tainted by an improper pretrial photographic identification. We cannot consider the point since no objection was made to Rendueles' identification

of defendant in the trial court and nothing in the record suggests that the in-court identification was not based upon facts quite independent of any pretrial identification. Consequently defendant has waived any objection to the in-court identification insofar as this direct appeal is concerned. (*People* v. *Almengor,* 268 Cal.App.2d 614, 616-618 [74 Cal.Rptr. 213]; *People* v. *Armstrong,* 268 Cal.App.2d 324, 326 [74 Cal.Rptr. 37]; *People* v. *Rodriquez,* 266 Cal.App.2d 766, 769-770 [72 Cal.Rptr. 310].) The reason for the rule is manifest; if objection to identification procedures is raised for the first time on direct appeal, the People are deprived of an opportunity to present contra or explanatory evidence, and the trial court is denied an opportunity to pass upon such questions of fact. Were the rule otherwise, it would place a reviewing court in the position of being a finder of fact on questions raised de novo on appeal.

Moreover, the record reflects that the victim's in-court identification of defendant is supported by evidence that he picked up defendant and his wife during daylight hours, that they were together for eight hours, driving from Arizona to California, that defendant and the victim sat side by side part of the time, that they entered lighted restrooms together, and that the dome light of the car was activated every time a door was opened. Thus, for eight hours. Rendueles observed defendant sitting, standing, walking, bending, and from every side and angle. (*People* v. *Bauer,* 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637].)

Defendant raises a number of questions concerning use of his statement made to officers shortly after he was confined to jail. Viewing the circumstances surrounding the giving of the statement in their totality, we learn that defendant was arrested about 4:30 a.m. and taken to the sheriff's office. About 7 a.m., Officer Strasner advised defendant of his rights and asked if he wished to make a statement. Defendant not only told Strasner he had nothing to say but refused to give his name, even for the purpose of booking. Strasner left defendant in the custody of the jailer, who placed him in a cell. At 11 or 11:30 a.m., defendant told the jailer he wanted to talk to Officer Strasner, and the jailer relayed the request to Strasner by telephone. Defendant was taken to the lineup room, where he met Strasner, to whom he said he would "discuss the matter" if he were permitted to first confer with his wife and she agreed that he should talk. His wife was brought to the room by a police matron, and defendant was permitted to confer with her privately for about 10 minutes. Both were then advised of their constitutional rights, for the third time since their arrest early that morning. Defendant told Strasner that he understood his rights and waived them, and thereupon in narrative form recited the details of the trip from Arizona to California. Occasionally his wife corroborated his recitals by

saying "Yes" or nodding affirmatively when Strasner asked her: "Is this right?"

At the *voir dire* hearing to determine the admissibility of the confession, defendant denied Strasner's version of the conversation that preceded the making of the statement. He testified that it was Strasner who importuned him to make a statement at 11 a.m., after defendant had refused to make a statement and had asked for an attorney at 7 a.m.; further, that Strasner had offered defendant's wife immunity or inferred that if defendant would confess and take the blame this would exculpate his wife.

Defendant contends that two errors emanate from the admission in evidence of his confession. First, it is argued the confession should have been denied admission under the rationale of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], as articulated by the California Supreme Court in *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625]. In *Fioritto* (at p. 718) the court gave a literal application to the *Miranda* language, "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." But this does not mean that an officer cannot again talk to a defendant, or interrogate him, if the proper safeguards are observed. Whether the statement of a defendant is outside the proscription of *Fioritto* must be determined from the circumstances peculiar to the individual case, and the Supreme Court has laid down the basic condition for admissibility by the following dicta in *People* v. *Ireland,* 70 Cal.2d 522, 536 [75 Cal.Rptr. 188, 450 P.2d 580]: " . . . even a defendant in *custody* might make statements admissible under *Miranda* if it were shown that such statements were the result of the defendant's own initiative and did not arise in a context of custodial *interrogation.*"

Here, while defendant at first refused to talk to the officer about the case, he later changed his mind and advised the jailer that he, defendant, wanted to talk to Officer Strasner. This was not the result of any inducement on the part of police officers, but was of defendant's own volition. Moreover, defendant was granted his request to talk with his wife and determine if it was agreeable with her that defendant "discuss the matter." He talked privately with his wife and thereafter voluntarily, in the presence of his wife, gave the confession which was received in evidence, but, even then, only after defendant and his wife were again advised of their rights as required under *Miranda.*

Defendant makes much of the fact that during *voir dire* examination

he contradicted Strasner's testimony concerning events leading up to the confession, and appears to argue that in view of all the surrounding circumstances this reviewing court should reverse the trial court's resolution of the conflict and accept defendant's version of what ocurred. It is now settled that an appellate court must accept a trial court's resolution of contradictory evidence on *Miranda* and *Fioritto* issues, just as it accepts a trial court's determination of fact issues in other areas of the law. (*People* v. *Stroud*, 273 Cal.App.2d 670, 676 [78 Cal.Rptr. 270].) ▮ The second confession-error asserted by defendant is the court's failure to give two jury instructions; one, fashioned after the rule of *Fioritto*, reads as follows: "If you find that the Defendant invoked his constitutional rights to remain silent and later made a statement to the police you must determine whether or not the statement made was voluntarily initiated by the Defendant or was the result of in-custody interrogation however subtle or gentle. Unless you find that the statement was voluntarily initiated by the Defendant and not the product of compulsion, subtle or otherwise, you must completely disregard it in determining the guilt or innocense of the Defendant."

The other proffered instruction the court refused to give is CALJIC 29-A (Revised), which would have advised the jury, in part, that: "In determining the innocence or guilt of the Defendant, you must not consider any admission or confession unless it was voluntarily made." This introductory paragraph of 29-A is followed by a number of paragraphs explicating various rules applicable to voluntariness.

Both of these instructions are directly contrary to Evidence Code section 405 in that they instruct the jury to determine voluntariness of the confession as the basis for its use, which, in substance, would be a redetermination of the question of admissibility. That this is impermissible is clear from section 405, which provides: "With respect to preliminary fact determinations not governed by Section 403 or 404:

"(a) When the existence of a preliminary fact is disputed, the court shall indicate which party has the burden of producing evidence and the burden of proof on the issue as implied by the rule of law under which the question arises. The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises.

"(b) If a preliminary fact is also a fact in issue in the action:

"(1) The jury shall not be informed of the court's determination as to the existence or nonexistence of the preliminary fact.

"(2) If the proffered evidence is admitted, the jury shall not be instructed to disregard the evidence if its determination of the fact differs from the court's determination of the preliminary fact."

Preliminarily, we note that the section not only follows the mandate of *Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], in delineating a *voir dire* procedure outside the presence of the jury to determine admissibility of confessions, but also, as far as California is concerned, settles two questions that were not reached in the *Jackson* opinion. The first is whether the *voir dire* hearing on admissibility must be heard by a different judge or jury from the judge who is trying the case. ■ Section 405 directs *the court* to *determine* the "preliminary fact." In this context the term, "the court," would include any judge of the court in which the case is pending, so that the judge who tries the case need not call in another judge, but himself may hear the *voir dire* examination, as here.

The other question relates to the procedure before the jury after the court has preliminarily determined that the confession is admissible. Historically, the principles enunciated in CALJIC 29-A exemplify basic principles of law that were in effect in California for well over a century prior to the United States Supreme Court decision in *Jackson* v. *Denno, supra,* which gave impetus to the enactment of Evidence Code section 405. In pre-*Jackson*-v-*Denno* cases, foundational evidence for admission of a confession was presented to the court in the presence of the jury and, if the court admitted the confession in evidence, the jurors were instructed to make an independent determination of voluntariness and to *disregard* the confession if they determined it was given involuntarily, despite the court's ruling as to voluntariness. *Jackson* v. *Denno, supra,* laid down the requirement of a *voir dire* determination of admissibility out of the presence of the jury, but did not delineate the procedure to be followed once the court, on *voir dire* determines the confession meets the foundational requirements for admissibility. Whether the jury, too, should hear evidence upon the admissibility issue and pass upon the question of voluntariness independent of the judge's *voir dire* determination as had been traditional in California, was left unanswered. Section 405, subdivision (b), paragraph (2), filled the lacuna by specifically providing that if a confession is admitted, "the jury shall *not* be instructed to disregard the evidence [confession] if its determination of the fact differs from the court's determination of the preliminary fact [voluntariness]." (Italics added.)

■ Thus the proffered instructions based upon *Fioritto* and CALJIC 29-A, which instructed the jury to disregard the confession if they found it involuntary, were properly refused by the trial court.

■ The question that logically follows, in light of the proscription against a jury determination of voluntariness in relation to whether the confession may be considered as evidence at all, is whether evidence of voluntariness can be introduced before the jury for purposes other than determining admissibility of the evidence and, if so, the governing conditions. Manifestly, to deny a defendant the right to produce evidence before the jury that bears upon the truth or falsity of his confession, that is, the weight to be given such evidence as contrasted with its admissibility, would constitute reversible error. Section 405 eliminates any such implication by providing, in subdivision (b), that if a preliminary fact, that is, evidence relating to the admissibility of a confession, is also a fact in issue in the action, that is, is relevant to the question of guilt or innocence, the jury shall not be informed of the court's determination as to the existence or nonexistence of the preliminary fact. In short, if evidence is presented before the jury relating to the integrity of the confession, which evidence previously has been presented to the court on the question of admissibility, the jury shall not be informed of the judge's resolution of the fact issue at the *voir dire* hearing, and there is no impinging by the court upon the fact-finding province of the jury as to the issue of guilt or innocence.

■ Defendant raises the additional point that refusal to allow the jury to hear and determine the issue of voluntariness and to disregard the confession if found to be involuntary, denied him his constitutional right to have the jury determine a question of fact in his case. The contention appears to be that he was denied his Sixth Amendment right to trial by jury and his Fourteenth Amendment right to due process. ■ As we have noted, section 405 does not preclude a defendant from placing before the jury evidence relevant to the ultimate issue of guilt even though it may also bear on voluntariness. Section 406 specifically provides: "This article does not limit the right of a party to introduce before the trier of fact evidence relevant to weight or credibility."

The misunderstanding of the import of section 405 arises from the failure to distinguish between the two purposes for which the evidence was offered, that is, between a question of law on the one hand, and a question of fact on the other. When evidence of voluntariness of a confession is heard on *voir dire* by the court, the sole issue is the admissibility of the evidence and, since admissibility of evidence is a question of law (see *People* v. *Gorg,* 45 Cal.2d 776, 780-781 [271 P.2d 469]; *People* v. *Lawrence,* 149 Cal.App.2d 435, 446 [308 P.2d 821]), the procedure denies a defendant neither a trial by jury nor the due process of law. When the same evidence is offered during the trial to prove the unreliability of the confession as evidence of guilt, it is then "relevant to weight or credibility," and the jury must determine whether the confession is true, partially true, or completely

false. But the jury may not, as under the former system epitomized by CALJIC 29-A, treat the confession as nonevidence by disregarding it; the confession remains evidence in the case, to be weighed according to instructions on that subject given by the court.

█ In summary, defendant had his day in court; he was allowed to present his evidence of the circumstances surrounding the confession; the trial judge gave the jury a definition of an admission and of a confession, instructed them on the law pertaining to weighing conflicting evidence, generally, and specifically instructed: "You are the exclusive judges as to whether an admission or a confession was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true." He also instructed the jury that "Evidence of an oral admission or confession of the defendant ought to be viewed with caution."

Had defendant wished more explicit instructions, he should have offered them rather than rely upon former CALJIC 29-A and his own improvised instructions based on *Fioritto,* both of which are directly in conflict with Evidence Code section 405.

The judgment is affirmed.

Gargano, J., and Coakley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied on April 1, 1970.