[Crim. No. 765. Fifth Dist. Aug. 4, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR RAY JONES et al., Defendants and Appellants.

## COUNSEL

H. W. Bailey, under appointment by the Court of Appeal, and William A. Smith for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Edsel W. Haws and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—Each of the four defendants herein was convicted of violation of Penal Code section 288b, oral copulation by force, and of Penal Code section 286.1, sodomy by force, following a grand jury indictment and a jury trial.

The sordid facts are these: Richard Ray Patterson was booked into the Fresno County jail about 4:30 p.m. on November 5, 1968, and placed in tank 305. Later that day he was approached by a fellow inmate who asked if he knew how to do a dance called the "boogaloo." Patterson then learned that he was to dance while clad only in the front half of a loin cloth. When he refused to perform, he was beaten by defendants Jones and Goodin, and a third inmate who has been tried in another action. After completing his dance, Patterson was told to orally copulate an inmate not a party to this proceeding. When he refused, he was again beaten

by the same three persons. He was told that he had "better make it good" or they would beat him again, and if he attempted to bite or if he told anyone about the actions or tried to get out of the tank they, Jones, Goodin and the third prisoner, would kill him. Patterson then committed the act of oral copulation while being held by Jones and Goodin. Two nights later, Patterson was again forced to commit acts of oral copulation, this time on appellant Floyd. Five or six nights later, he was forced to orally copulate defendants Trotter, Floyd and Jones. Patterson subsequently effected a transfer from tank 305, and reported the incidents to the authorities.

Larry Smith entered the Fresno County jail on November 12, 1968, and was placed in tank 305. Shortly after his arrival, he was made to take part in a mock "wedding ceremony" in which he was the "bride" and wore a veil made of toilet tissue. In the ensuing days he was forced to walk through the cells asking other inmates for a kiss. Later in the evening on which he was admitted, Smith was beaten and forced to dance the "boogaloo." After completing the dance, he was again beaten and forced to orally copulate six persons, including defendants Floyd and Jones. Each of the six inmates that forced himself on Smith additionally required him to submit to acts of sodomy. One of the attackers threatened him with a knife, and he believed that this inmate did have either a knife or some sharp instrument. Two nights later, Smith was again forced to orally copulate six persons, including Floyd and Goodin. All of the attackers also forced him to submit to acts of sodomy, with the exception of defendant Goodin.

Both Patterson and Smith positively identified each defendant at the trial. The defense called as witnesses three men who were inmates of the jail on the dates the acts allegedly occurred, and each stated that he had neither seen nor heard any indication of the acts of which defendants were accused. Defendant Goodin took the stand and denied any involvement in the sexual acts, but stated be believed that some type of sexual activity had taken place involving Patterson and Smith, and that he did observe the mock wedding.

There is testimony that the victim Smith had recently received an undesirable discharge from the Navy because of homosexual activities in New York, in which homosexuals paid him to allow them to orally copulate him. Other evidence was adduced to show that he was a homosexual, despite his testimony that his activities in New York were performed strictly for the financial consideration he received, not for homosexual gratification.

An investigator for one of the defense attorneys testified that the cells are pitch black when the lights are out, and that identification would be impossible. However, there is testimony that at the time the acts were com-

mitted a candle was burning in the cell and the light bulbs that had been covered were not completely blacked out and some light was emitted.

■ Prior to trial, defendants moved for separate trials, but not upon *Aranda* grounds (*People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]), and there is no indication that any defendant had made an extrajudicial statement implicating any other defendant. Rather, it was asserted that the defendants were antagonistic toward one another, particularly toward Goodin, who claimed to be afraid of the others. But antagonism, standing alone, is not a ground for separate trials unless there is, additionally, a showing that the defendants accuse each other, or that their defenses are conflicting. Each defendant was represented by separate counsel below, so there was no conflict of interest insofar as representation was concerned; there was no conflict as to the theory of trial and none of the defendants sought to waive a jury. We find untenable the argument that there was prejudice to any of the defendants from mere association with the others in a joint trial; all defendants were inmates of the jail when the events occurred, a fact known to the jurors and a fact that separate trials would not conceal.

In short, at the outset of the trial there was no reason urged by defendants that would justify separate trials, in the face of Penal Code section 1098 which requires a joint trial unless adequate grounds for separate trials are advanced. To state the proposition conversely, it was not an abuse of discretion for the court to require that defendants be tried jointly. (*People* v. *Lopez,* 60 Cal.2d 223, 253 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Ketchel,* 59 Cal.2d 503 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Blagg,* 267 Cal.App.2d 598 [73 Cal.Rptr. 93].) ■ However, during the trial it developed that three of the four defendants asserted their right, under the Fifth Amendment, not to testify. Before argument, the court informed the attorneys that in their respective arguments to the jury none would be permitted to comment upon the fact the three defendants did not testify. Defendant Goodin, who did testify, now argues that this ruling deprived him of the right to point out to the jury that the silence of his codefendants corroborated his testimony that if the acts did occur, he did not participate, the inference being that if the jury believed the two victims the finger of suspicion pointed to the three defendants who refused to take the stand and deny participation, as he had done.

In light of *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], the trial court was correct in not permitting Goodin or the People to comment upon the failure of any defendant to testify. Once a defendant elects to exercise his Fifth Amendment right it must be honored by every participant in the trial, not by just the prosecuting attorney and

the court. "It is the fact of comment rather than the source of comment that effects denial of the right." (*People* v. *Haldeen,* 267 Cal.App.2d 478, 481 [73 Cal.Rptr. 102].)

Defendant Goodin argues that conceding the ruling was correct in its *Griffin* aspect, it deprived him of an opportunity to present his theory of defense, namely, that if the crimes were committed they were committed by others. This, he argues, is analogous to *Aranda* error and, by parallel reasoning, the failure to grant a severance when this circumstance arose during the trial constituted reversible error.

The error in *Aranda* resulted from the confession of one defendant inculpating a codefendant. The situation here is not apposite in that the alleged error arises not from anything a codefendant said before or during trial, but from his refusal to say anything at all by exercising his right under the Fifth Amendment. Defendant Goodin does not claim this inculpated him but, rather, that it denied him an inference of exculpation or at least precluded him from arguing such inference. His argument is fragile, at best, based as it is upon tenuous and speculative evidence. It assumes that given separate trials the other defendants would continue to invoke the Fifth Amendment, an assumption which may or may not be correct; it is entirely possible that the other defendants, if tried first before Goodin's trial, might testify against him, particularly in view of his alleged fear of his codefendants and his mistrust of them, which he expressed during trial. Goodin's argument would be much more persuasive had he testified that his codefendants did commit the crimes of which they were convicted; all he said was that if the crimes were committed, he did not participate in their commission. He did not accuse his codefendants, which renders untenable his argument that by remaining mute they corroborated his testimony that if the acts occurred he did not participate.

■ We find no merit in Goodin's contention that because his attorney was not present when the victims were shown photographs of all the prisoners in the cell block, he is entitled to a reversal. In the first place, the record 'does not reflect whether Goodin's attorney was or was not present at the time; no foundation was laid in the trial court upon which to base the argument on appeal. (*People* v. *Merriam,* 66 Cal.2d 390 [58 Cal. Rptr. 1, 426 P.2d 161]; *People* v. *Carroll,* 4 Cal.App.3d 52 [84 Cal.Rptr. 60].) In any event, the case was still in the investigatory stage, Goodin had not been charged with the crime nor was he a suspect other than to the extent that he was an inmate of the cell block, as were a number of others. At that time the victims had identified no one, Goodin was not a suspect but simply was one of many who could have participated and, of course,

he had not been charged with the crime and had no attorney. (*People* v. *Lineman,* 5 Cal.App.3d 1, 4 [84 Cal.Rptr. 891].)

Defendant Goodin argues that because only inmates of the cell blocks or tanks that had access to the area where the acts occurred could be suspects, all possible suspects were known and he was one of them. We reject the argument; to accept it would be to say that the investigating officers would have had to ask for the appointment of an attorney for every jail inmate who possibly could have been in the area when the crimes were committed, before proceeding with the investigation. Further, the crimes were committed over a period of several days, during which time there was a turnover in jail inmates having access to the area. If we follow defendant Goodin's argument to its logical conclusion, it would mean that where an unidentified member of an organization such as a motorcycle club commits a crime, every member of the club must be considered a suspect and, accordingly, pictures of none could be shown to the victim unless an attorney is appointed for each member before the pictures are viewed. Moreover, the record does not support defendant's contention that the in-court identification of defendant Goodin was tainted by the investigatory photograph identification. (*People* v. *Carroll, supra,* 4 Cal.App.3d 52; *People* v. *Romero,* 272 Cal.App.2d 39, 49 [77 Cal.Rptr. 175].)

Defendant Goodin next contends it was error not to sever his trial from that of the other defendants when two witnesses for them appeared in court wearing jail garb. No prejudice resulted; the jurors were well aware that the crimes charged were committed in the jail, the testimony of the witnesses related to matters pertaining to conduct in jail, and their clothing could not alter this fact. Certainly the record does not reflect that this circumstance had a demonstrable effect upon the outcome of the case.

Defendant Goodin alleges that the manner in which the district attorney conducted the case prejudiced him and denied him a fair trial. Upon two occasions objection was made to remarks by the district attorney, and the trial judge admonished the jury to disregard the remarks. There was no objection made or exception taken to a number of other instances about which defendant Goodin also complains. We do not find these instances of sufficient significance to warrant a reversal of the judgment, since we are satisfied the record adequately supports the convictions of all defendants and, of course, the further fact that no foundation was laid during trial by way of objection and request for an admonition.

Defendant Goodin asserts that "the incompetence of co-counsel" reflected upon him to his prejudice. The trial was far from a mockery or a farce, as these criteria are articulated in *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], but of greater importance, there has

been no showing that the manner in which co-counsel conducted themselves prevented Goodin from presenting any particular defense he wished to advance. It cannot be said that the conduct of co-counsel denied Goodin his day in court.

■ Defense counsel contends the court committed reversible error in sustaining an objection to cross-examination of one of the victims. The witness testified in answer to a request for a description of the clothing he wore at the time he was booked into jail that, among other things, he was wearing a jacket with a certain colorful insignia on the back. When asked what the insignia represented, he replied, a motorcycle club in Ohio. Defense counsel asked if he was a member of the motorcycle club, and the prosecuting attorney objected. Counsel then made an offer of proof. He proposed to show that the witness was a member of the Ohio club and to then point out that it was similar to the Hell's Angels Motorcycle Club in California, whose members practice sex perversion. From this he would draw the inference that the witness practiced sex perversion as a member of the Ohio club. The prosecuting attorney pointed out that the offer of proof assumed that all members of the Hell's Angels indulged in perversion. Defense counsel replied: "Your Honor, we can handle it by calling in some of the members." But the court was not assured by the offer of proof that the attorney had available members of Hell's Angels who would so testify. Moreover, the offer of proof was predicated upon the second assumption that because Hell's Angels practiced sex perversion the Ohio motorcycle club also practiced sex perversion, an assumption upon an assumption.

The trial judge did not abuse the discretion vested in him under Evidence Code section 352, in sustaining the objection to the question relating to the witness's membership in the Ohio motorcycle club. (*People* v. *Mathis,* 63 Cal.2d 416, 423 [46 Cal.Rptr. 785, 406 P.2d 65]; *People* v. *Jones,* 268 Cal.App.2d 161, 166-167 [73 Cal.Rptr. 727].) Moreover, had the attorney proved that Hell's Angels practice sex perversion, the inference that the Ohio motorcycle club likewise practiced perversion and therefore the witness practiced perversion would have been so attenuated that, we are convinced, such evidence would not have changed the outcome of the case. That is to say, granted, arguendo, there was error, it was not reversible error in light of the entire record. (Cal. Const. art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Defense counsel was permitted to ask the same witness whether he had participated in homosexual acts in the City of New York between April 26 and August 21, and the witness replied that he permitted approximately 15 different men to orally copulate him during that period of time in New

York, and received $15 to $30 for each act. Thus defense counsel was not prevented from asking questions directly concerning specific acts of perversion; he was denied only the right to general cross-examination based upon the assumption of facts not in evidence, which facts he did not offer to introduce in evidence through acceptable means.

■ In addition to the points discussed above, raised by defendant Goodin, defendants Jones, Trotter and Floyd raise some additional grounds of appeal. First, they contend the evidence of complaining witness Patterson was prefaced in many instances with the words, "I believe," or "I think," rendering them inadmissible statements of opinion. No objection was interposed to the testimony in the trial court (*People* v. *Foster,* 271 Cal.App.2d 763, 765 [76 Cal.Rptr. 775]) but, even so, the testimony related to the issue of identity, and a lay witness may give his opinion on that issue. (*In re Corey,* 230 Cal.App.2d 813, 826 [41 Cal.Rptr. 379].) Furthermore, the victims made positive and unequivocal identification of each of the defendants in instances other than those cited in the briefs.

■ A related question raised by defendants is the sufficiency of the evidence to support the jury's verdict since only the two victims testified to the forced acts of oral copulation and sodomy. It is well settled in California that one witness, if believed by the jury, is sufficient to sustain a verdict. Revolting as the evidence is, none is beyond belief, nor does it reflect a physical impossibility. The rule is that: "To warrant the rejection by a reviewing court of statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or it must be such as to shock the moral sense of the court; it must be inherently improbable and such inherent improbability must plainly appear." (*People* v. *Perrin,* 247 Cal.App.2d 838, 844 [55 Cal.Rptr. 847].)

We cannot herein repeat the evidence, which covers over a thousand pages of transcript; suffice it to say that there is sufficient evidence of a substantial nature to support the jury's findings that the crimes were committed.

■ One defendant complains that the district attorney thwarted his right to discovery. The district attorney refused to divulge the whereabouts of one of the victims because of threats of bodily harm to him and his mother if he testified against the defendants or certain of the defendants. Counsel complained to the court that he was unable to interview the witness, and the court replied: "All right, I'm going to do this. Mr. Bailey, I'm not going to order the People to disclose the address of the witness Patterson, but I'm doing this with the understanding that the People will have him available for further examination by you at anytime you request prior to the time he testifies for the People.

"I can well understand why a complaining witness in a case such as the one at hand would be concerned about his possible harrassment or intimidation by the defendants or friends of the defendants or the family of the defendants in this case. I'm not stating that this would be done, but I can foresee the possibility of something along this line, and I think your clients' rights are fully protected if the witness Patterson is produced for your examination."

Prior to impaneling the jury, the court asked all defense counsel if they had talked to the witness Patterson all they wished. The attorney representing defendants Trotter, Jones and Floyd on this appeal, indicated to the trial judge that he had talked to Patterson but that he wanted his address in case he should think of more questions to ask. The judge ordered that the witness be made available upon request, and the record thereafter is devoid of any request for discovery. In the circumstances, further discovery must be deemed to have been waived. (*People* v. *Young*, 224 Cal.App.2d 420 [36 Cal.Rptr. 672].) Perhaps counsel's argument on this point is most vulnerable in that he suggests nothing that he could have learned by further questioning the witness in aid of his clients' case.

The judgment is affirmed.

Gargano, J., concurred.

Petitions for a rehearing were denied September 1, 1970, and appellants' petitions for a hearing by the Supreme Court were denied October 1, 1970. Peters, J., was of the opinion that the petitions should be granted.