## STATE v. WARNER.

No. 5002. Decided July 21, 1932. [13 P. (2d) 317.]

For former opinion see 79 U. 500; 291 P. 307.

*F. W. James* and *N. H. Tanner,* both of Salt Lake City, for appellant.

*Geo. P. Parker,* Atty. Gen., and *L. A. Miner,* Deputy Atty. Gen., for the State.

STRAUP, J.

In this case the judgment of conviction on appeal by the defendant was affirmed. 79 U. 500; 291 P. 307. There may be found the facts and a review of the questions presented and considered. On application by the defendant a rehearing was granted. It was urged that we, in affirming the judgment in some particulars, erred as to the law announced

on the prior hearing. We are satisfied with what we there said and decided and in such respect affirm our former opinion. A point, however, is urged which was assigned as error and discussed, and which it is asserted we had not considered, and as shown by the opinion was not decided, in fact no mention made of it in the former opinion.

The point made is that the defendant was denied a substantial right on cross-examination of the prosecutrix. On the former hearing we thought the alleged error not of sufficient prejudicial effect to justify a reversal of the judgment. We have thus re-examined it.

To illustrate the character and effect of the alleged error it is necessary to again briefly refer to some of the evidence. The defendant was convicted of the crime of incest, having carnal knowledge of the body of his daughter between 13 and 14 years of age. He was the father of three children, two daughters, the prosecutrix, a younger daughter about 11 years of age, and one son about 16 years of age. His wife, when he married her, had a son by a former marriage who was taken into the defendant's household. She deserted him when the children were yet young. They, including the stepson, remained with the defendant. The record without dispute shows that he took a great interest in his children, maintained them, and employed housekeepers to keep house and to assist in taking care of the children. He was shown to be of good habits and morals, industrious, and was employed in honorable employment. The state for conviction relied alone on the testimony of the prosecutrix. As is seen by the former opinion, her testimony was wholly uncorroborated. We there held she was not an accomplice, and hence a conviction could lawfully be had on her testimony alone without corroboration. We adhere to that ruling. The testimony of the prosecutrix as to the time, place, and manner of the commission of the alleged offense is referred to in the former opinion. The time fixed by her as to the commission of the offense was October 8, 1928. At the preliminary hearing and at the trial she fixed that

date because, as she testified, the time of the commission of the charged offense was about the time of her birthday, which was October 11th. She testified that on the evening of October 8th, while the housekeeper was absent, her father sent the children to bed and told her to occupy the bed with him in his room; that she did so, and that her father that evening and on the next morning had sexual intercourse with her. The defendant was a witness in his own behalf, and denied having had any sexual relations whatever with his daughter; that the house had three bedrooms, one of which was occupied by the two daughters, one occupied by the father and his son about 16 years of age, and the other occupied by the housekeeper. His son testified that, at the time stated by the prosecutrix and for a considerable time prior thereto and thereafter, he and his father slept in one of the bedrooms, the girls in another bedroom, and the housekeeper in the third room. That also was the testimony of the housekeeper, and who testified she was not absent on the occasion testified to by the prosecutrix. To that effect was also the testimony of the younger daughter. They all testified to facts and circumstances rendering the testimony of the prosecutrix somewhat improbable. It further was shown that, when the stepson was home, the two boys slept in the room occupied by the father and the son, and that the father slept on the porch.

The defendant and the housekeeper married in March following. In September following, about a year after the time the prosecutrix testified to the criminal relations with her father, the housekeeper, then the wife of the defendant, learned of criminal relations between the prosecutrix and her half-brother. She thereupon filed a complaint in the juvenile court against the half-brother whereupon he and the prosecutrix were taken in custody by the officers of the juvenile court. It was then the prosecutrix for the first time made any claim of criminal relations with her father. That was made to the juvenile court officers. That led to the arrest of the defendant.

The prosecutrix, having testified to criminal relations with her father and having also testified to criminal relations with her half-brother, and with another young boy, both before and after her relations with her father, on cross-examination was asked as to conversations between herself and her half-brother with respect to the relations testified to by her. The questions were asked with the view of showing that the prosecutrix and her half-brother thought that if she accused her father of criminal relations —"put the blame on him"—the authorities would not interfere with herself or with her half-brother, and she was asked what in such respect she had stated to her half-brother. All efforts to elicit such matter were promptly blocked on objections by the prosecution on the ground that the matter sought to be elicited was "immaterial and irrelevant." The objection was sustained. When counsel asked to be heard "in relation to this," the court replied that he did not care to hear them; that there was no need taking up time with it; and that what was sought to be elicited "was the rankest kind of hearsay"; but counsel could make their record. After the ruling, counsel for the defendant further asked the witness if she had conversations with her half-brother concerning the relations testified to by her, to which counsel for the prosecution objected by saying that she had already testified that she had such conversations; and thereupon the witness answered in the affirmative. She then was asked what she said to her half-brother, and if she remembered what she said to him, to which the witness answered that she did not remember. She then was asked if in such conversations "it was not stated" that she had relations with her father, and if "it was not stated" that "if we put it on to him (the father) that they (the authorities) would not interfere with us," to which she answered in the negative. Then she was asked if her half-brother made the statement to her that she had relations with her father, whereupon the prosecution objected by saying that she had already answered that

in the negative. She then was further asked if she did not remember of her half-brother making such statement to her, whereupon the state again objected upon the ground that whatever the half-brother said to her was immaterial and irrelevant. The objection was sustained and there the matter ended.

As bearing on and affecting the credibility of the witness and the weight to be given her testimony, the defendant on cross-examination had the right to inquire into what was sought by him. For that reason the inquiry was not open to the objection that it was immaterial or irrelevent or was hearsay or otherwise incompetent. In view of the testimony of the prosecutrix, the court, on cross-examination, ought to have given the defendant a rather liberal latitude. At the threshold of the inquiry the court closed the door on it. While thereafter the witness answered that she had conversations with her half-brother concerning the criminal relations testified to by her, that she did not remember what she said to him, that in such conversations the half-brother had not stated that she had such relations with her father, and that "it was not stated" that, if they put the blame on her father, the authorities would not interfere with herself or her half-brother, yet, when counsel for the defendant attempted to further pursue the matter and further cross-examine her with respect thereto, the court sustained objections on the ground that the inquiry "was immaterial and irrelevant." The right of cross-examination is a valuable and substantial right. 5 Jones' Comm. on Ev. (2d Ed.) 4564. While in some particulars, in the exercise of a sound discretion, the trial court may limit the extent of cross-examination, yet here we think the court unduly restricted it. Where, in a case such as here, the state wholly relied on the uncorroborated testimony of the prosecutrix, the court ought to have given the defendant the right to a liberal cross-examination; but as we think, unduly restricted it on a misconception, induced by the prosecution, that the inquiry was immaterial and

irrelevant. Since the state wholly relied on the uncorroborated testimony of the prosecutrix, the accusation filed by the housekeeper upon consultation with the defendant against the prosecutrix and her half-brother with whom she freely admitted criminal relations, no complaint whatever made by the prosecutrix of any criminal relation with her father until after she and her half-brother were taken in custody by the juvenile court officers, the charged offense denied by the defendant and his testimony corroborated, we also are of the opinion that the ruling affected a substantial right of the defendant resulting to his prejudice. It in a way is urged that the defendant did not sufficiently make known to the trial court the real purpose of the inquiry. Counsel for the defendant asked to be heard on the matter; but the court stated he did not care to hear them. Further, a cross-examiner ordinarily is not required to state what he expects to prove on the cross-examination. He is not, like the party who produces witnesses, supposed to know what the witness will testify to, and he could not well state what he expected to show by the cross-examination. The reason and the spirit of the rule requiring such an offer on examination in chief have no application to such a case, and such a requirement would often defeat the very purpose of the cross-examination. 2 Elliott on Ev. 186, § 911. We do not say such a ruling so restricting a cross-examination should justify a reversal in all cases. We think it here was harmful because of the particular facts and circumstances of the case and for the reasons just stated.

We are therefore of the opinion that the order heretofore made affirming the judgment should be and it hereby is vacated; and the order now made that the judgment of the court below be reversed, and the case remanded for a new trial.

ELIAS HANSEN and EPHRAIM HANSON, JJ., and WORTHEN, District Judge, concur.

FOLLAND, J. (concurring).

I hesitate to concur in the reversal of this case for the reason that the questions propounded to the prosecutrix imply that the defendant had criminal relations with the girl, but that in divulging that fact she would divert attention to him and thus probably work a release of her half-brother, whom she desired to protect, and for that reason she made the accusation against her father. I would have no hesitancy whatever in concurring if the implication arising from the questions sought to be asked was to the effect that the father was innocent of any such relations, but notwithstanding that fact he was accused so as to divert attention from the boy. The mere fact that the father is accused because of unworthy motives would make no difference as to his guilt if he in fact had such relations. However, I concur in the reversal for the reason that I am strongly of the opinion that in cases such as this where the evidence of guilt rests solely on the testimony of one person, and no corroboration is required, that the court should allow the greatest latitude in cross-examination of the prosecutrix.

CHERRY, C. J., did not participate herein.