[Crim. No. 8990. In Bank. Nov. 10, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MERL J. CLARK, Defendant and Appellant.

504

Haskell J. Shapiro and Louis I. Bell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Ronald W. Tochterman, Deputy Attorney General, for Plaintiff and Respondent.

McCOMB, J.—From a judgment after trial before the court without a jury, finding defendant guilty of violating section 288 of the Penal Code, he appeals.

*Facts*: The prosecutrix, Autumn Landers, the 11-year-old stepdaughter of defendant, testified, in substance, that during the period November 15, 1962, through May 22 of the following year defendant on three separate dates took her into his bedroom and had sexual intercourse with her. Defendant denied having sexually molested her at any time.

Question: *Did the trial court err in restricting the scope of the cross-examination of the prosecutrix and the examination of defense witnesses called to impeach her?*

*Yes.* These rules are here applicable:

(1) In this type of case the broadest latitude in cross-examination and production of rebuttal evidence is required. (*People* v. *Scholl*, 225 Cal.App.2d 558, 562-563 [8a, 9] [37 Cal.Rptr. 475] [hearing denied by the Supreme Court].)

(2) Although generally the *character* of a witness may not be attacked by evidence of specific wrongful acts (Code Civ. Proc., § 2051[1]), this rule is not controlling where the inquiry goes beyond character and involves a basic fact in issue. Accordingly, evidence contradicting the testimony of a witness, even if it consists of proof of other wrongful acts, is proper if it is relevant to an issue in the case.[2] (*People* v. *Westek,* 31 Cal.2d 469, 480 [8] [190 P.2d 9]; *People* v. *Hurlburt,* 166 Cal.App.2d 334, 339 [3] [333 P.2d 82, 75 A.L.R.2d 500] [hearing denied by the Supreme Court].)

The prosecutrix testified that defendant had sexual intercourse with her on three separate occasions. Although she was examined by a physician, no medical testimony was offered to corroborate her statements.

She testified, among other things, that she had never before seen the private parts of any boy or man and that she had never had sexual experiences before or gone into bedrooms with boys.

The defense maintained that the charges were fantasy or fabrications on the part of the prosecutrix and that she was not telling the truth, and offered to prove that she had engaged in sexual experience short of intercourse with at least four boys and had a propensity to fabricate stories about sexual molestations.

The boys were not permitted to testify with respect to any particular sexual experiences with the prosecutrix.

The offered testimony of the boys was to the effect that the prosecutrix knew about sexual matters and had indulged in sexual play with them; that she knew about sexual organs, male urges, and male responses to sex play; and that she had obtained other knowledge through reading and discussions

---

[1]Section 2051 of the Code of Civil Procedure provides, in part: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except . . . [a prior felony conviction]."

[2]Where the matter to be contradicted deals with a "collateral matter," cross-examination may be restricted, in the discretion of the trial court, and other witnesses are not permitted either to give testimony in contradiction or to prove prior inconsistent statements. A matter is not considered collateral, however, if "the fact could be proved *independently* for some purpose recognized as proper, either because of its relation to the issues in the case, or because it tends to discredit the witness, by showing bias, interest or other matters affecting his credibility." (Witkin, Cal. Evidence (1958) § 673, p. 711; see also *People* v. *Burton,* 55 Cal.2d 328, 344 [11] [11 Cal.Rptr. 65, 359 P.2d 433].)

with her friends of both sexes and with her mother and father.

The trial court refused to admit proffered testimony regarding the particular instances of the prosecutrix' sex play with the boy witnesses, upon the ground that such evidence was inadmissible under section 2051 of the Code of Civil Procedure and upon the ground of immateriality and irrelevancy.

Applying the foregoing rules to the facts in the present case, it is clear that the trial court erred in refusing to receive the proferred evidence.

The record discloses that the charges did not come to light until after a long talk between the prosecutrix and her older sister Toni at their natural father's house on the evening of Father's Day. Between midnight and 2 a.m. the girls had a discussion and then awakened their father and told him of the alleged molestations by defendant. This was *six months* after the first alleged offense.

Toni, the older sister, had made similar charges against defendant five years previously, of which charges he was acquitted; and thereafter she was sent to live with her natural father. An inference of motive and fabrication can be drawn from such circumstances, the prosecutrix having testified she loved her natural father very much.

The record discloses that the prosecutrix never complained to her mother at any time that the stepfather had engaged in any of the alleged acts of intercourse (the prosecutrix' mother so testified and stated that the warm and affectionate relationship between stepdaughter and stepfather had remained unchanged during the entire period) ; 13 witnesses testified on behalf of defendant, all to the effect that defendant's home was a meeting place for schoolmates; since both defendant and the prosecutrix' mother worked, there were hours each day when there was no adult supervision; practically every afternoon the home was visited by boys and girls of varying ages; in the 10-day period immediately preceding and including the day of the alleged offense of which defendant was convicted, defendant's sons and four of their friends worked every afternoon in the yard of defendant's home on an automobile given to one of the sons by defendant; the house was always open, with young people given full freedom of access; all testified that there never was any change in the affectionate attitude of the prosecutrix for her stepfather up to the time of her visiting her natural father

and older sister; none ever saw defendant come home on the afternoon of the alleged offense; the mother testified that the prosecutrix would lie at times; her school teacher testified that her reputation for truth was bad and that she cheated in her studies; the mother testified that defendant and she had intercourse three or four times a week and corroborated his alibi that on the day of the alleged offense he phoned her from Corona, where he had gone to assist his brother; and his brother corroborated such alibi.

The prosecutrix testified that each of the three alleged offenses lasted 15 to 20 minutes and took place in exactly the same way; there was little or no conversation with defendant on any of the occasions; there was full penetration, and yet she suffered no bleeding or other ill effects; immediately after the acts she went to a girl friend's house and listened to records, telling no one what had happened; and she went to school the next day and felt fine.

As hereinabove indicated, defendant put in issue the prosecutrix' motives, the possibility of fabrication, and the role fantasy may have played. Hence, evidence rebutting her statement that she had never had any other sexual experience was relevant to the issues involved. The impropriety, therefore, of denying such evidence, either on cross-examination of the prosecutrix or on rebuttal in defense, is clear.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.