[Crim. No. 19532. Second Dist., Div. One. Nov. 30, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS MASCARENAS, Defendant and Appellant.

**COUNSEL**

Herbert M. Porter for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Barbara T. King, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—This is an appeal from a judgment of conviction on five counts of furnishing a narcotic, codeine, to a minor in violation of Health and Safety Code section 11502. We reverse the conviction because of the trial court's action in unduly restricting cross-examination of the only substantive witness against appellant, and in refusing evidence properly offered to cast doubt on the testimony of that witness.

Eric Serrantino, then 16 years of age, desired to become a federal narcotics agent at some future time. To pursue his interest in that career, to learn something of the law, and to help his community, he presented himself at the Santa Monica Police Department and volunteered to work as an undercover agent in a narcotics "buy program." He was interviewed by Officer Robert Legerski of the department. Legerski, being aware that the Los Angeles Sheriff's Department occasionally utilized juveniles as undercover informers in connection with narcotics activities at schools, advised Eric of potential danger and difficulty if he were to serve in the capacity desired by him. He told Eric to consider the matter further. Eric returned a week later. He informed Legerski that he desired to participate in a "buy program" and that he had his parents' permission to do so. Shortly afterward, Eric's mother came to the Santa Monica police station and signed a consent form. Legerski then agreed to use Eric.

Legerski trained Eric for a period of three to four months, preparing him for his undercover work. He was taught the appearance and street names of various drugs, the necessary vernacular, and current street prices so that he might appear to be an experienced user. After the training, Eric was given the go-ahead to proceed with his undercover activity.

In the latter part of January 1970, Eric attempted "to make a connection to buy weed" from a man known as "Perfecto." He was told by Perfecto to return the next day. The following morning, Eric met Perfecto, an unidentified individual, and appellant on the sidewalk of the 200 block of Broadway in Santa Monica. Appellant is an elderly man, permanently disabled by a back ailment and an ulcer. At all times here pertinent he was being treated by the Veterans' Administration and by a private physician. In the course of that treatment, appellant was given prescriptions for a codeine compound, each prescription for 15 or 18 tablets, a one-week supply. On one occasion, while his regular physician was out of town, a substitute doctor prescribed a two-week supply of 30 tablets. That prescription, however, was for a compound of codeine not compatible with appellant's ulcer.

In their original meeting, Eric and apppellant conversed on generalities without discussing the subject of drugs. During the next two weeks, Eric

saw appellant at the Sunset Bar in Santa Monica or in the general vicinity of the bar approximately nine times.

Eric testified with respect to his relationship with appellant as follows. During the two-week period, Eric and appellant discussed the subject of drugs, and appellant stated that he could obtain a prescription for them. Eric determined to secure appellant's confidence. To that end, he, on one occasion, accompanied appellant to a department store and, at appellant's suggestion, stole a hat. The hat was not returned nor did Eric or the Santa Monica police inform the store of the theft or offer to pay for it. On February 9, 1970, Eric met appellant at the Sunset Bar where he asked appellant for "downers" or any form of drugs. Having been informed by appellant that the latter would have to go to his doctor to get "some prescriptions or scrips," Eric accompanied appellant to a physician's office and waited while appellant saw the doctor. Appellant received three prescriptions which he displayed to Eric, one for 18 "No. 3" codeine, one for 18 barbiturates, and one for "bentil." Eric went with appellant to a drug store where appellant had the prescriptions filled. While Eric did not see the appellant pay for the pills, he heard the cash register ring. The two walked to Jerry's Liquor Store where, at Eric's request, appellant sold him eight codeine tablets for $1.00. Later the same day, appellant gave Eric four red capsules of an undetermined composition. Having left appellant at about 6:30 p.m. on February 9, Eric returned home where he wrapped the codeine and red capsules in a cigarette paper and placed them in a pocket of a brown jacket hung in his closet. Eric placed with the tablets a handwritten note describing the details of the transaction. On February 11, Eric purchased 30 codeine pills from appellant. The pills were contained in a prescription bottle marked as Empirin Compound No. 3. The label on the bottle stated appellant's name, his address, the name of the prescribing physician, and a prescription number. Eric paid $1.00 for the 30 pills. Eric placed the bottle of 30 pills in the same brown jacket in his closet. On February 12, Eric delivered the result of his two purchases to Officer Legerski where the pills were initialed by Eric and the officer. On February 14, Eric purchased five codeine tablets from appellant for 25 cents. He again placed the pills in a pocket of the jacket in his closet. He purchased nine codeine tablets from appellant for $1.00 on February 19 and placed them in his jacket. On February 20, he delivered the previously stored pills to Legerski where they were marked. On March 2, Eric purchased eight codeine tablets from appellant on his promise to pay $1.00 the next time he saw appellant. The pills were again stored in Eric's jacket until March 6 when Eric delivered them to Legerski. Eric checked the pills four or five times a day while they were in his jacket.

Eric's testimony is the only evidence in any way tending to establish ap-

pellant's guilt. That testimony is totally uncorroborated, there apparently having been no effort made to supply Eric with marked funds for a transaction or to conduct a surveillance of his meetings with appellant.

Appellant's efforts to cross-examine Eric were severely curtailed by the trial court. An objection to a question designed to elicit Eric's home address, and thus the place where he purportedly stored the contraband for periods up to five days before taking it to his police contact, was sustained on the basis of a finding of the trial court as a matter of preliminary fact that "the People have shown good cause to indicate that the witness is in possible danger of harrassment, intimidation, humiliation, if not personal safety." Examination designed to establish that Eric, while engaged in his undercover activities, had stolen bottles of wine to ingratiate himself with a suspect was also barred. So were questions on the subject that on at least one occasion Eric had offered a false charge against a suspect chosen by him.

Appellant denied selling or furnishing pills to Eric on any occasion. He explained Eric's possession of the prescription bottle containing the 30 codeine tablets and bearing appellant's name by offering testimony of his landlady that Eric had stolen the bottle from a cabinet in the reception room of her rooming house. Appellant explained his own possession of medication of various types by reference to his back injury and ulcer for which his physician had prescribed a codeine compound, seconal, and an ulcer remedy. Appellant described his relationship with Eric as one of sympathetic friendship motivated in part by Eric's apparent loneliness.

On cross-examination, appellant admitted that he usually drank some beer each day and occasionally some hard liquor. Appellant's landlady, who testified that she had observed Eric steal the prescription bottle from the cabinet in which it was kept, and had reported the theft to the police, was impeached by a showing that she had held herself out as appellant's wife and that she was helping to finance his defense.

Appellant was found guilty of the five charges of furnishing codeine to a minor filed against him. On this appeal, he contends: (1) the trial court prejudicially erred in sustaining the prosecution's objection to cross-examination of Eric designed to elicit his home address; (2) the court prejudicially erred in refusing to permit testimony that Eric had stolen wine in an effort to establish a case against another suspect and that he had made a false charge against still another person; and (3) the court erred in receiving in evidence police reports of stolen vehicles designed to establish that appellant's landlady had held herself out as his wife. We conclude that appellant's first two contentions are supported by the record and require that we reverse the conviction in the case at bench.

### Evidence of Eric's Home Address

█ On cross-examination, Eric was asked where he lived. The prosecution objected to the question on the ground that disclosure of the address would subject Eric to a danger of "reprisal, humiliation and intimidation." In response to that objection, the trial court conducted a hearing to determine its factual validity.

Read in the light most favorable to the ruling of the trial court sustaining the prosecution's objection, the evidence at the hearing disclosed the following: On April 8, 1970, prior to the preliminary hearing in the case at bench, Mrs. Hazel Hollowell, appellant's 61-year-old landlady, confronted Eric at a grocery store where he was working. Mrs. Hollowell told everyone present in the store, including the proprietor, that Eric had informed on appellant and "turned him in to the police." She asked Eric if he carried a knife. Eric was fired from his job. Mrs. Hollowell attended appellant's preliminary hearing and two trials in which Eric was a prosecution witness. She kept notes of the proceedings. After the jury in one of the trials returned a guilty verdict, Mrs. Hollowell shook a pencil in the direction of the forelady and said that she would get even. There is no evidence of any follow-up action by Mrs. Hollowell with respect to any of the jurors in that case. During the trial of appellant, Mrs. Hollowell approached Eric. She said, "I know where you live," and "went on like that." At recesses of the trial, she frequently called Eric a liar when she met him in the hallway. Mrs. Hollowell asked Officer Legerski "what lies" Eric had told. She frequently asked Legerski for the spelling of his name with respect to notes she was making of the trial. Mrs. Hollowell denied any threat.

The trial court found: "that the People have shown good cause to indicate that the witness is in possible danger of harrassment, intimidation, humiliation, if not personal safety." It held that Eric need not disclose his address. We conclude that the ruling of the trial court was erroneous.

Evidence Code section 351 states: "Except as otherwise provided by statute, all relevant evidence is admissible." The question to which the objection was sustained sought highly relevant evidence. It was the prosecution's burden to establish that the evidence of contraband offered by it against appellant had not been tampered with or altered. (*People v. Riser,* 47 Cal.2d 566, 580 [305 P.2d 1].) Eric had stated that he kept that evidence in a jacket pocket in his home for periods up to five days before he delivered it to the police. When the court sustained the objection to the question seeking Eric's address, it precluded the defense from exploring the possibility of facts bearing upon the security of the real evidence vital to the conviction or innocence of appellant. The evidence barred by the court

is equal in significance to that describing the function of an evidence locker at a police station. The evidence of Eric's address was also relevant as it might permit the development of facts which would bear upon his community reputation or tend to show bias. (*Alford* v. *United States,* 282 U.S. 687 [75 L.Ed. 624, 51 S.Ct. 218].)

Respondent did not cite the trial court to any statute permitting exclusion of the relevant evidence despite Evidence Code section 351. It has cited us to none. If we assume that the probability of harm to a witness permits exclusion of evidence pursuant to Evidence Code section 352 which grants the trial court discretion to bar relevant evidence if "its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice. . .," the ruling of the trial court is nevertheless erroneous. The discretion granted the trial court by section 352 is not absolute and must be exercised reasonably in accord with the facts before the court. Here the record establishes an abuse of discretion. The probative value of the excluded evidence is great. The evidence is vital to the validity of the chain of untampered possession of the contraband and is significant as bearing upon the credibility of the only witness against appellant. The possibility of harm found by the trial court is not the probability stated in section 352. Moreover, the possibility sustained by the evidence is not the one found by the trial court. It is at most one that a 61-year-old woman will engage in oral expression which will embarrass Eric by accusing him of making an unfounded criminal charge. The risk of such an accusation is one of those undertaken by Eric when he decided, after advice from Officer Legerski, to become an undercover police investigator.

A similar situation to that present in the case at bench has reached our Court of Appeal. There, in a pandering prosecution, ambiguous tape recordings of conversations were supported by a witness testifying under an assumed name. On cross-examination, the witness was asked her true name and address. An objection to the question was sustained after a finding of preliminary fact based upon substantial evidence that the witness' life was in danger and that the danger would be enhanced if she answered the question. The Court of Appeal held that the denial of the answer to the question was prejudicial error requiring reversal of the conviction. The court noted that the trial involved a direct conflict of testimony between the defendant and the one live prosecution witness, and stated: "Under the circumstances, the credibility of the two opposing witnesses constitutes the fulcrum upon which the determination of the defendant's guilt or innocence must be balanced. We conclude that the identity of the witness was an essential element in the protection of the defendant's right to a fair trial." (*People* v. *Bran-*

*dow,* 12 Cal.App.3d 749, 755 [90 Cal.Rptr. 891]; see also *Smith* v. *Illinois,* 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748].)

The probative value of the evidence barred in *Brandow* is less than that barred in the case at bench. There it went only to possible impeachment. Here it goes to impeachment and, much more significantly, to the integrity of the real evidence offered against appellant. The risk of harm to the witness in *Brandow* is much greater than that here present. There the risk was to the life of the witness. Here it is only that the witness may be berated verbally by a 61-year-old woman. The decision in *Brandow,* that risk of harm to the witness did not justify the exclusion of relevant evidence, impels a like holding here where the evidence is of greater importance and the risk to the witness materially less.

### Testimony of Thefts and False Charges

■ Appellant offered evidence that on one occasion Eric had stolen bottles of wine to ingratiate himself with a subject whom he was investigating. He offered other evidence that Eric had falsely charged another subject with furnishing narcotics. Objections were sustained to both offers of testimony on the ground of Evidence Code section 787 which precludes evidence of specific instances of conduct relevant only as tending to prove a trait of character for the purpose of attacking the credibility of a witness. Those rulings are erroneous.

Evidence Code section 1101 provides in subdivision (b) that evidence of commission of a crime is admissible to prove a relevant fact "such as [a] plan." Here the evidence of Eric's theft of the wine was relevant to an issue other than proof of a trait of character to attack his credibilty. It tended to prove a plan on his part to steal to accomplish his objective. A principal issue at trial concerned the manner in which Eric acquired possession of the prescription bottle labeled with appellant's name and containing 30 codeine tablets. Eric testified that appellant sold him the bottle of pills while appellant produced testimony that Eric stole the codeine. Evidence that Eric stole on another occasion to accomplish his mission of making a case for Officer Legerski was relevant as tending to corroborate the testimony offered by appellant that Eric had stolen for that same purpose in the case at bench. The evidence being relevant to a purpose other than that stated in Evidence Code section 787 is not barred by that section. The evidence being relevant to a purpose stated in Evidence Code section 1101, subdivision (b) is admissible pursuant to that section.

Appellant offered the testimony of Mrs. Dolly Dimple Quick that Eric

had falsely charged her with selling drugs to him. The trial court again sustained a prosecution objection founded on Evidence Code section 787. That ruling was in error. ■ "Although generally the *character* of a witness may not be attacked by evidence of specific wrongful acts . . ., this rule is not controlling where the inquiry goes beyond character and involves a basic fact in issue." (*People* v. *Clark,* 63 Cal.2d 503, 505 [47 Cal.Rptr. 382, 407 P.2d 294].) That proposition has been applied to authorize the introduction by the defense in charges of sexual violations upon minors of evidence of prior false charges by the minor or his siblings (*People* v. *Clark, supra,* at p. 506), or by his parent. (*People* v. *Scholl,* 225 Cal.App.2d 558, 564 [37 Cal.Rptr. 475].) The admissibility of evidence of prior false charges is rationalized by the strong possibility that the charge against the defendant may be the result of a youthful fantasy or be motivated by malice and by the fact that the only available witnesses are likely to be the alleged victim and the defendant. (*People* v. *Scholl, supra,* at pp. 563-564, and cases there cited.) ■ A similar situation exists in the case at bench. Eric was not an ordinary witness. He was 16 years of age and had volunteered strictly on his own initiative to become an undercover operative so that he might eventually become a federal narcotics officer. His age and motivation for his task created a possibility of fantasy equal to that present in the typical sex offense. By not utilizing readily available techniques of marked bills or surveillance to corroborate or disprove Eric's allegations, Officer Legerski created a situation identical to that present in the typical alleged sex offense against a minor, one where the only testimony to the purported crime that is available is that of the alleged victim and the defendant. We thus conclude that the close analogy of the facts of the case at bench to the rationale of cases involving charges of sexual misconduct with minors required the admissibility of evidence of the prior false charge made by Eric.

### Prejudice

■ Respondent does not argue that any error in excluding the evidence offered by appellant was nonprejudicial. Our examination of the record indicates that appellant was prejudiced within the meaning of California Constitution, article VI, section 13. The determination at trial of the case at bench depended upon the choice of credibility of Eric's testimony or the evidence given by appellant and his witnesses. Erroneous restrictions upon the cross-examination of Eric and upon evidence relevant to establish his unreliability of necessity interfered with the proper resolution of that issue. The prosecution's case was by no means overwhelming. There was not a scintilla of corroboration of Eric's testimony. The use of a 16-year-old as an undercover agent was as a minimum unorthodox. Eric had a strong mo-

tive to vindicate his position by securing a conviction of appellant, particularly since he was an admitted thief of a hat, a practice hardly to be condoned by the police. The total cash consideration paid by Eric for the pills was $3.25, a price which implies at least that appellant was selling the pills at a loss. Eric testified that one other transaction was consummated on credit, a most unusual occurrence in a sale by a drug pusher. On balance, it seems probable that a result more favorable to appellant would have been reached had the court admitted the evidence which it erroneously excluded.

## Disposition

The judgment is reversed.

Wood, P. J., and Clark, J., concurred.