**STATE of Utah, Plaintiff and Respondent,**

v.

**Irvin MOTON, Defendant and Appellant.**

**No. 20806.**

Supreme Court of Utah.

Jan. 20, 1988.

Edward K. Brass, Salt Lake City, for defendant and appellant.

David L. Wilkinson, David B. Thompson, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant Irvin Moton appeals his convictions of sodomy upon a child, a first degree felony, and sexual abuse of a child, a second degree felony. He contends that he was denied a fair trial because the trial court did not excuse a biased potential juror for cause, that he received inadequate assistance of counsel at trial, and that the trial court improperly restricted his right to confront and cross-examine a witness against him.

During the voir dire of the jury panel which had been called to hear the case, the trial judge asked the prospective jurors whether they believed the mandatory penalty of a five-, ten-, or fifteen-year prison term for sodomy upon a child and the five-year-to-life penalty for sexual abuse of a child were "not severe enough." He then asked those prospective jurors who had responded affirmatively to either question whether they believed their attitudes toward the penalties for the two crimes involved would interfere with their ability to fairly determine defendant's guilt or innocence. Two potential jurors answered "no"; two (one of whom defendant argues should have been dismissed for cause) answered, "I don't think so"; and two replied that their feelings about penalties might influence their decision. The latter two individuals were excused for cause.

The trial judge continued with the voir dire, asking several questions, including the jurors' prior experience with sexual abuse cases, possible racial prejudice, prior knowledge of the parties involved in the trial, their family and employment backgrounds, and whether they considered themselves capable of giving defendant a fair trial.

Finally, the trial judge permitted counsel for defendant and the State to ask the prospective jurors questions. Defense counsel asked only one question, whether the panel had prior involvement with special education programs. The subject of penalties for the crimes involved was not raised by either side. Both the State and the defense then expressly passed the jury for cause. By peremptory challenges, the State removed one of the prospective jurors who did not think the penalties would affect his decision in determining guilt or innocence, and defense counsel removed the other prospective juror.

In the course of the trial, the ten-year-old victim of the alleged sexual misconduct was called as a witness for the State. On direct examination, she testified that she understood that it was wrong to lie and promised that her testimony would be the truth. She admitted that she had lied on other occasions unrelated to the instant case. She then testified that on December 24, 1983, defendant entered her bedroom, requested that she face the wall while standing on the bunkbed ladder, and began licking her genital area. He then offered her five dollars to lick his genitals, which she refused to do. She further testified that on January 4, 1984, defendant approached her while she was in the bathtub and began sucking her breast and touching her genitals.

On cross-examination, defense counsel was permitted to ask the victim if she had "danced in front of [defendant] without any clothes on." She replied that she did not remember. She did admit that she knew a lot about sex and, in fact, knew all about sexual anatomy and understood the act of fellatio. Defense counsel then attempted to question her about her prior sexual experiences. Repeated objections from the State were sustained by the trial court. At that point, the jury was excused in order to allow defense counsel to argue for admission of the excluded testimony and to make a proffer of what that testimony would show. Defense counsel indicated that the line of questioning she sought to pursue would reveal that the victim had a "propensity to become involved in sexual kinds of things" and that the victim had a "propensity to lie about this sort of thing, and, in fact, that [she was lying in the instant case, fabricating the] sexual experience for attention."

The trial court determined that the child's prior sexual activities were immaterial. It ruled that defense counsel could not question the child about specific in-

stances when she had observed sexual activities, because it had already been established that the child had a great deal of knowledge about sexual matters. However, the court allowed defense counsel to question the victim about prior untruthful statements, including those relating to sexual activities.

The jury returned to the courtroom and the trial proceeded. Defense counsel questioned the victim about prior instances when she had lied, including an instance when she had lied about a man's kissing her. In each case, the victim admitted that she had in fact lied. She further stated that she could not remember saying she had a sexual encounter with one of her friends, but admitted that she had been bragging to her friends and her relatives about the instant case and that she did not like defendant.

Defense counsel called the victim's aunt as a witness. She admitted that defendant had been her boyfriend. She further testified that the victim had a reputation for telling lies and had reported having sexual relations with one of her friends at school. Defendant took the stand and denied committing the offenses charged.

## I.

The brilliance of the adversarial system is that each side tries to select a jury which is most favorable to its position. Thus, each side shows its best profile, and justice sees truth full face. Defendant maintains that the trial court denied him the opportunity to demonstrate his best profile by failing to further question a prospective juror about her opinions concerning the penalties for sodomy upon a child and sexual abuse of a child and by failing to excuse her for cause, despite defense counsel's failure to request that she be excused. We disagree.

■ Procedurally, defendant's claim that it was error for the trial court to fail to excuse a prospective juror for cause, despite defense counsel's failure to request that she be excused, is in direct contradiction to Utah law. Rule 12(d) of the Utah Rules of Criminal Procedure states:

Failure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial or at the time set by the court shall constitute waiver thereof....

In *State v. Miller,* 674 P.2d 130 (Utah 1983), we stated: "Counsel neither objected, reminded the judge of the oversight, made a new request, nor asked permission personally to voir dire the jury under U.C.A., 1953, § 77–35–18(b). Such failure effectively waived the error under U.C.A., 1953, § 77–35–12(d)...." *Id.* at 131 (footnote omitted).

The cases that defendant relies upon are inapposite to the case at bar. In both *State v. Hewitt,* 689 P.2d 22, 25 (Utah 1984), and *State v. Brooks,* 631 P.2d 878, 883 (Utah 1981), defense counsel made motion to dismiss potential jurors for cause and the trial courts erroneously denied the motions. Defendant's failure to request that the prospective juror be dismissed for cause or to explore the topic of her alleged bias, especially when defendant was expressly given an opportunity to question the panel and to raise any challenges for cause, constitutes a waiver of any error attributable to the trial court's failure to do so of its own accord.

■ On the merits of the question, it is well established that it is prejudicial error to compel a party to exercise a peremptory challenge to remove a venireman who should have been excused for cause after the venireman expressed bias and concern about whether he could be impartial. *State v. Malmrose,* 649 P.2d 56 (Utah 1982); *Jenkins v. Parrish,* 627 P.2d 533 (Utah 1981); *State v. Moore,* 562 P.2d 629 (Utah 1977). Only "strong and deep impressions" on the part of a venireman, however, serve as a basis for disqualification. *State v. Bailey,* 605 P.2d 765, 767 (Utah 1980) (citing *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1878) (quoting Chief Justice Marshall in the trial of Aaron Burr)). Rule 18(e)(13) and (14) of the Utah Rules of Criminal Procedure provides occasions when a prospective juror may be excused for cause due to bias. Rule 18(e)(13) states that a challenge for

cause may be granted if the potential juror has "formed or expressed an unqualified opinion or belief as to whether the defendant is guilty or not guilty of the offense charged." Rule 18(e)(14) provides that even where actual bias is not shown, a potential juror may be excused for cause if "a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging." In *State v. Brooks*, 631 P.2d 878 (Utah 1981), we held:

> [B]ased on the juror's expressed feelings, attitudes, and opinions, the trial court must determine by a process of logic and reason, based upon common experience, whether the juror can stand in attitude of indifference between the state and the accused.

*Id.* at 884. The trial court has traditionally been given considerable latitude as to the manner and the form of conducting the voir dire examination and is only restricted in that discretion from committing prejudicial error. *Utah State Road Commission v. Marriott*, 21 Utah 2d 238, 444 P.2d 57 (1968).

██ Our review of the transcript before us reveals that the trial court did not abuse its discretion in failing to excuse this prospective juror for cause. The prospective juror expressed only her belief that the penalties were too lenient; she further stated that she did not think that that opinion would have any bearing on her ability to determine defendant's guilt or innocence. We have acknowledged that a potential juror should not be considered biased merely because he or she holds "light impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony." *State v. Bailey*, 605 P.2d at 767. The prospective juror's responses to the trial court's voir dire did not indicate strong feelings of the type that would require excusing her for cause. Thus, the trial court correctly concluded by a process of logic and reason, based upon common experience, that the prospective juror's impressions were not so "strong and deep" as to constitute bias which would close her mind against testimony that may be offered.

## II.

██ Defendant next contends that he was denied effective assistance of counsel because his trial counsel did not request that the prospective juror in question be removed for cause. In challenging a conviction on the ground of ineffective assistance of counsel, it is defendant's burden to show (1) that his counsel rendered a deficient performance in some demonstrable manner, and (2) that the outcome of the trial would probably have been different but for counsel's error. *State v. Geary*, 707 P.2d 645 (Utah 1985); *see also Codianna v. Morris*, 660 P.2d 1101 (Utah 1983); *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Failure to make the required showing of either deficient performance on the part of counsel or of sufficient prejudice as a result of counsel's error defeats the ineffectiveness claim." *Geary*, 707 P.2d at 646; *see also Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071.

██ Defendant fails to meet either prong of this test. Our finding that the failure to remove the prospective juror in question was not error directly conflicts with defendant's contention that his counsel rendered a deficient performance in some demonstrable way. Therefore, defendant cannot contend that the outcome of the trial would probably have been different but for the alleged error of counsel.

## III.

We next turn to defendant's claim that the trial court denied him his right of confrontation when he proposed to ask the victim a number of questions concerning prior sexual conduct on her part and prior fabricated sexual misconduct accusations against other persons. Defendant's purpose was two-fold: to show that she had the knowledge and ability to create a false

accusation against him and to diminish her credibility by showing that she had made such accusations in the past.

The sixth amendment to the United States Constitution guarantees a criminal defendant the right to confront and cross-examine adverse witnesses. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). "[T]he Sixth Amendment right to confrontation requires only that the accused be permitted to introduce all relevant and admissible evidence." *State v. Johns*, 615 P.2d 1260, 1264 (Utah 1980). We reaffirm that the admissibility of character evidence of prior sexual behavior should be determined by the trial judge upon consideration of various factors, including (a) relevancy and probative value; (b) prejudicial effect; (c) confusion of the issues and undue consumption of time; and (d) substantial justice. *Id.* at 1263; *see also* Utah R.Evid. 403. The pertinency of this test is that character evidence, many times, is of slight probative value, is very prejudicial, and may confuse the issues at trial. One of the trial judge's duties is to regulate the admission of character evidence so as to exclude evidence which tends to distract the trier of fact from the main question of what actually happened on a particular occasion. This process prevents the trier of fact from rewarding one individual and punishing another because of their respective characters, instead of focusing upon the evidence in the case.

In the instant case, the trial court ruled that evidence of some of the victim's past sexual activities was immaterial and not necessary to establish that she had the knowledge required to fabricate an accusation against defendant. She had already admitted to having a great deal of sexual knowledge. The trial court used its discretion in determining that the evidence defendant sought to elicit from these past sexual activities would only serve to unfairly prejudice the victim, inflame the minds of the jurors, and fail to address any rele-

vant dispute of material fact. Thus, the trial court only excluded evidence of the victim's sexual experiences that was not relevant to either her motive to accuse defendant or her credibility.

We find that defendant was not denied his right to confront the complainant and challenge her veracity. Although the trial court did not permit all of the questions defendant wished to ask, it did allow a plenitude of questions relevant to the victim's sexual knowledge, her past lies (including those regarding sexual matters), and possible motives for lying in the instant case. In addition, defendant himself took the stand and attacked the credibility of the complainant. Therefore, after review of the record, it is evident to us that the confrontation allowed by the trial court was sufficient to satisfy defendant's sixth amendment constitutional right.

Affirmed.

HALL, C.J., concurs.

ZIMMERMAN, Justice: (concurring).

I share some of the concerns expressed by Justice Stewart that the trial court may have unduly limited the cross-examination of the victim. As his opinion indicates, the right of cross-examination is especially important in cases where there is little evidence besides the version of the victim and the contradictory version of the defendant. I conclude that the trial court probably erred in excluding all of the additional questions defense counsel sought to ask, especially when there is a reason to believe that these questions were *not* lacking in foundation. *See State v. Hackford*, 737 P.2d 200, 203 (Utah 1987). However, under all of the circumstances, I conclude that whatever error the trial court may have committed by unduly limiting cross-examination into prior sexual activities that would have shown sophistication on the part of the victim, sufficient evidence on that point was admitted so as to make the trial court's error harmless under the applicable federal constitutional standard. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986);

*State v. Hackford,* 737 P.2d at 205–06 & n. 3.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.

STEWART, Associate Chief Justice: (dissenting).

I would reverse and remand for a new trial. I believe that the trial court's limitation of the defendant's cross-examination of the alleged victim constituted a violation of the defendant's Sixth Amendment right of confrontation and that violation was prejudicial error.

The defendant's theory of defense was that the victim's allegations were confabulations against him. To prove that the victim had confabulated, defense counsel sought to cross-examine the victim on what defense counsel called the victim's "fetish" for sexual things. The defendant asserted that because the alleged victim was preoccupied with sexual matters, she was more likely to have either fabricated or confabulated the charges. The trial judge excluded all questions about the victim's sexual knowledge and past sexual experiences, except as to specific instances that bore directly upon the credibility of her testimony, such as evidence showing she had lied or had contradicted herself. That limitation was far too narrow.

Evidence frequently relied on to support a child's veracity in sexual abuse cases is the child's use of sex-related words whose use is atypical of children that age and the child's descriptions of adult-type sexual acts, especially when they are thought to be deviant or unusual and hence foreign to the experience of an ordinary, normal youngster. If, however, a child has learned sexual words from someone other than the defendant, or experienced sexual acts with someone other than the accused, that information is clearly relevant. It is especially probative when there is some possibility that the victim may be confabulating by blending fact and fantasy because of an obsession or feelings of guilt arising from some other conduct, or because an adult has coached the child into a "memory" of "nonfacts," or simply because of the cognitive functioning of the particular child.

I recognize that inquiry into such matters may well be embarrassing for the victim, but temporary embarrassment must surely yield to the integrity of the fact-finding process when an innocent person's liberty is at stake. Certainly a fundamental constitutional right cannot be disposed of on a ground so unsubstantial.

The questions to which the defendant was denied an answer included the following:

Q: Do you remember when you were living with your mom that she would have boyfriends come over to her house?

. . . .

Q: Did your brother or his friends ever make you do sexual things to them?

. . . .

Q: You saw your mom's boyfriends do sexual things, didn't you?

. . . .

Q: You have seen all those things [male genitals and fellatio] before, haven't you?

. . . .

Q: . . . [H]ave you ever grabbed at other children's private parts?

. . . .

Q: Have you ever tried to rub up against them [other children]?

. . . .

Q: Have you ever had trouble at school with wanting to show the kids your bra?

. . . .

Q: Have you ever asked [your male cousin] to take off all your clothes?

In my view, it was reversible error for the trial court to sustain objections to those questions. The evidence adduced suggests that the questions might have elicited evidence favorable to the defendant's case. The trial judge did allow some evidence that was relevant to the victim's credibility, but it fell far short of the probative value that the answers to the excluded questions might have had, and it clearly indicated that further questioning might have proved productive. The victim testified:

Q: Do you remember a time when you went over to [your aunt's] house?

A: Yes.

....

Q: Were you with [a male friend of yours] at the time?

A: Yes.

Q: Was [your male friend] selling some doughnuts to [your aunt]?

A: No, he was selling them with me.

Q: And do you remember telling [your aunt] that you had had sex with [your male friend] underneath the trailer at the school? Do you remember telling her that?

A: No.

Q: You didn't tell her that?

A: I don't remember.

Q: Did you ever say anything about you and [your male friend] doing nasty things?

A: I don't remember.

The testimony concerning the experience with the male friend was later contradicted by the victim's aunt.

The Sixth Amendment to the United States Constitution guarantees to an accused the right "to be confronted with witnesses against him." A primary right secured by the confrontation clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). The right of cross-examination is especially important in cases involving sex crimes when the only direct testimony condemning the accused comes from the alleged victim. It is easy to accuse a person of a sex crime, and it may be extremely difficult for an unjustly accused person to disprove the allegations. Unfortunately, courts have no better means of testing the credibility of a child's allegations than by cross-examination. This Court and a host of other courts in the United States have recognized the basic principle that wide latitude must be allowed on cross-examination if it is to serve its truth-finding function. *E.g., State v. Smith*, 90 Utah 482, 488–89, 62 P.2d 1110, 1114 (1936); *State v. Warner*, 79 Utah 510, 514–15, 13 P.2d 317, 319 (1932). *See also People v. Hurlburt*, 166 Cal.App.2d 334,

338, 333 P.2d 82, 85 (1958); *People v. Simbolo*, 188 Colo. 49, 52, 532 P.2d 962, 963 (1975); *People v. Sheperd*, 37 Colo.App. 336, 338, 551 P.2d 210, 212 (1976); *People v. Wilson*, 170 Mich. 669, 137 N.W. 92 (1912); *People v. Evans*, 72 Mich. 367, 40 N.W. 473 (1888); *Woods v. State*, 657 P.2d 180 (Okla.Crim.App.1983); 2 *Wharton's Criminal Evidence* § 425 (C. Torcia 13th ed., 1972).

Many of the questions disallowed by the trial court were directed to establishing a possible foundation for either confabulation or fabrication of the charges. The witness's responses to the defendant's questions might have shown that the complaining witness had unusual sexual knowledge for her age and had had prior sexual experiences which would render the possibility of confabulation or fabrication much more probable than if such knowledge or experience did not exist. *People v. Clark*, 63 Cal.2d 503, 504–506, 47 Cal.Rptr. 382, 383, 407 P.2d 294, 295 (1965). *See also People v. Francis*, 5 Cal.App.3d 414, 416, 85 Cal. Rptr. 61, 62 (1970); *People v. Blagg*, 267 Cal.App.2d 598, 605, 73 Cal.Rptr. 93, 100 (1968). For a general discussion of the subject, see 3A *Wigmore on Evidence* §§ 924a, 934a (Chadbourn rev. 1970); Annotation, *Cross-examination of Witness as to his Mental State or Condition, to Impeach Competency or Credibility*, 44 A.L. R.3d 1203, 1210 (1973). Broad cross-examination has typically been allowed on the issue of credibility, especially when it deals with a person's state of mind. *Sturdevant v. State*, 49 Wis.2d 142, 181 N.W.2d 523 (1970). *See also Hurlburt*, 166 Cal.App.2d at 335, 333 P.2d at 83; *Sheperd*, 37 Colo. App. at 338, 551 P.2d at 212–13; *Evans*, 72 Mich. 367, 40 N.W. 473; *Woods*, 657 P.2d at 182; 3A *Wigmore on Evidence* § 963 (Chadbourn rev.1970); Annotation, *Impeachment or Cross-examination of Prosecuting Witness in Sexual Offense Trial by Showing that Similar Charges Were Made Against Other Persons*, 75 A.L.R.2d 508 (1961).

Concern for embarrassment caused the victim in a sex case, though legitimate and appropriate, should not be allowed to cur-

tail the constitutional rights of a defendant. A trial judge can do much to protect and assist a child witness without infringing on a defendant's right to cross-examine. In this case, the defendant was denied his right to cross-examine effectively the only source of the accusations against him. I believe that a new trial should be ordered.